| People v Xi Hui Wu |
| --- |
| 2024 NY Slip Op 30601(U) |
| February 26, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 452904/2022 |
| Judge: Margaret A. Chan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

--------------------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE
STATE OF NEW YORK,

                     Plaintiff,

                - v -

XI HUI WU, XIAO RONG YANG, TCJ
CONSTRUCTION INC., and 345 OVINGTON LLC,

                    Defendants,

                - and -

SHIMON AVRAHAMI, YECHIEL SHIMON SPREI, and
JOHN DOE #1 - #10,

                    Relief Defendants.

--------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 452904/2022 |
| **MOTION DATE** | 06/08/2023, 06/08/2023 |
| **MOTION SEQ. NO.** | 002, 003 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 90, 91, 92, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 118, 120, 122, 127, 129

were read on this motion to/for                          **DISMISSAL**                    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 93, 94, 95, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 119, 121, 123, 124, 128, 130

were read on this motion to/for                          **DISMISSAL**                    .

The Attorney General for the State of New York (NYAG) brings this action, as amended on May 9, 2023, on behalf of the People of the State of New York against defendants[1] Xi Hui Wu and Xiao Rong Yang, alleging claims under New York's Martin Act, codified at Article 23 of the General Business Law (GBL), Executive Law § 63(12) (Section 63(12)), and General Obligations Law (GOL) § 7-

---

[1] NYAG discontinued this action against defendant 345 Ovington, LLC without prejudice , (NYSCEF # 131 - stipulation, dated December 29, 2023). Defendant TCJ Construction Inc. has not appeared in this action. NYAG separately names Shimon Avrahami, Yechiel Sprei, and John Does 1-10 as relief defendants.

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 1 of 22

103 (NYSCEF # 74 – SAC or the complaint). Before the court are defendants Wu and Yang's separate motions pursuant to CPLR 3211(a)(5) and (7) and CPLR 3016 for an order dismissing the complaint. NYAG opposes both motions. For the following reasons, the motions to dismiss are granted in part and denied in part.

### Background

This action pertains to an alleged years-long scheme perpetrated by Xi Hui Wu (Wu) and his former spouse, Xiao Rong Yang (Yang), through their company, 345 Ovington, LLC (Sponsor or 345 Ovington) in connection with the sale of real estate securities in a residential apartment building located at 345 Ovington Avenue, Brooklyn, New York (the Building) (NYSCEF # 74, second amended complaint [SAC] ¶¶ 1-7). The summary of the pertinent facts below is drawn from the second amended complaint and its accompanying exhibits. They facts are assumed true solely for purposes of this motion.

### *The Offering Plan*

On or about January 7, 2013, 345 Ovington submitted an offering plan to NYAG's Real Estate Finance Bureau, which related to a newly constructed, 25-unit condominium in the Bay Ridge section of Brooklyn, NY (the Offering Plan) (*see* SAC ¶ 34). The Offering Plan identified 345 Ovington as the sponsor and Xu and Yang as its principals and further designated Wu as President, Yang as Treasurer, and non-party Ann Hsiung, Esq., as Secretary for the Building's Board of Managers (SAC ¶¶ 36-37; NYSCEF # 74 at 6, 67). According to the Offering Plan, Wu and Yang would also manage the Building during its first year of operation (SAC ¶ 37; NYSCEF # 75 at 89). NYAG accepted the Offering Plan for filing on or about March 24, 2015, and the Building, in turn, was named "The Ovington Condominium" (SAC ¶ 35).

On September 14, 2015, after purportedly executing four purchase agreements for at least 15 percent of the units in the Building to be offered for sale, Sponsor submitted an "effectiveness amendment" to NYAG (SAC ¶¶ 39, 41; NYSCEF # 76). These purchasers, however, subsequently rescinded their purchase agreements (SAC ¶ 41). After NYAG accepted the effectiveness amendment, Sponsor was required to file a Declaration of Condominium with the New York City Department of Finance (NYCDOF) pursuant to the New York Condominium Act, but Sponsor failed to do so (*id.* ¶¶ 40, 42). As a result, the Building was never legally a condominium, NYCDOF never subdivided the Building, and Sponsor could not sell or transfer title to any specific units in the Building to potential purchasers (*see id.* ¶¶ 40, 42-45; NYSCEF # 106). But even though the Building was not legally a condominium, Sponsor, Wu, and Yang still attempted to sell and market real estate securities for units in the Building to Chinese immigrants and first-generation Chinese-Americans (*see* SAC ¶¶ 2-3, 7, 60-62, 67). Their efforts came to light through NYAG's various investigations into their practices (*see id.* ¶¶4-6).

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**                                          Page 2 of 22

2 of 22

<u>*NYAG's First Investigation and Sponsor's Alleged Code Violations*</u>

In 2014, NYAG and other local government authorities, began a New York City-wide investigation into potential violations of Section 421-a of the New York Real Property Tax Law (RPTL) (SAC ¶ 46). Through that review, NYAG uncovered evidence that Sponsor had reported to the New York City Department of Housing Preservation (HPD) that the Building was to be converted into a condominium and qualified for Section 421-a tax benefits (*id.* ¶ 47). NYAG further learned that Sponsor was renting properties in the Building during the condominium conversion process despite regulations prohibiting it from doing so (*id.* ¶¶ 47-48). And although the Offering Plan contained disclosures about leasing options available to interim purchasers,[2] Sponsor nevertheless leased many of the Building's apartments to "non-interim purchasers" in violation of the Offering Plan's representations, applicable regulations, and HPD rules (*id.* ¶¶ 49-50). Notably, insofar as the residents occupying the Building's units were traditional tenants, they would have been entitled the protections and benefits of the Rent Stabilization Law (RSL) (*id.* ¶¶ 51-52).

Concerned that the Building's residents were traditional tenants and not interim purchasers, NYAG, HPD, and the New York State Division of Homes and Community Renewal (DHCR) jointly issued a letter, dated August 25, 2015, which informed Sponsor that the Building was not in compliance with RPTL Section 421-a (SAC ¶ 53; NYSCEF # 77 at 1-2). The letter also indicated that NYAG would deem the Offering Plan abandoned if Sponsor failed to respond (SAC ¶ 53; NYSCEF # 77 at 2). Because NYAG did not receive a timely response, on December 8, 2015, NYAG issued a letter notifying Sponsor that the Offering Plan had been deemed abandoned (SAC ¶ 54; NYSCEF # 78 at 2).

In 2016, however, Sponsor contacted NYAG indicating that the residents living in the Building were not "tenants" under a traditional lease; rather, they were "genuine purchasers" who had executed purchase agreements pursuant to the Offering Plan (SAC ¶ 55). Sponsor consequently maintained that its residents were exempt from RSL protections (*id.*). Taking these representations into account, NYAG consented to Sponsor submitting an amended offering plan (*id.* ¶ 56). Sponsor subsequently submitted its proposed "Amended & Re-Stated Condominium Offering Plan" (the Amended Plan), which listed Wu and Yang as sales agents, named them as Sponsor's officers to the initial Board of Managers, and identified them as the initial property managers (*id.* ¶ 57; NYSCEF # 79 at 15, 73-74, 94).

---

[2] As explained in the complaint, NYAG's regulations provide for, in limited circumstances, a "safe harbor" for rental leases to *bona fide* purchasers who have not yet closed on sales of contracted-for units (SAC ¶ 49). An offering plan must fully disclose this option to all purchasers (*see id.* ¶¶ 49-50).

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

**Page 3 of 22**

Ultimately, NYAG rejected the Proposed Amended Plan (SAC ¶ 58). Rather, by letter dated May 23, 2016, NYAG identified numerous deficiencies in the proposal, including continued uncertainty about the status of the purported "interim purchasers" (*id.*). After Sponsor failed to submit a corrected offering plan, NYAG commenced a new inquiry into the status of the alleged interim purchasers and their purchase agreements (*id.* ¶ 59; *see also* NYSCEF # 98).

### *NYAG's Second Investigation and the Uncovering Defendants' Purported Scheme*

As part of its new investigation, NYAG submitted requests for information to Sponsor regarding the interim purchasers and their purchase agreements (*see* SAC ¶ 59). Sponsor responded by providing 17 single-page agreements that purportedly represented contracts for sale for condominium units at the Building (*id.* ¶ 60; NYSCEF # 80). Each agreement indicated that the alleged purchaser had deposited $5,000 with Wu as a "good faith deposit to purchase the premises located at 345 Ovington Ave" (SAC ¶ 60; NYSCEF # 80 at 3-19). The letter further represented that each of these deposits were being held in escrow (SAC ¶ 60; NYSCEF # 80 at 2).

With the investigation progressing, NYAG learned of various issues concerning the nature of the Building's residents and their purported purchase agreements (SAC ¶¶ 61-63, 67). To start, NYAG uncovered that many of the Building's residents were ethnic-Chinese who spoke and read limited English (*id.* ¶ 61). NYAG further uncovered that, between May 21, 2012, through July 26, 2016, Wu and Sponsor executed purchase agreements for approximately 18 to 20 units in the Building—none of which conformed to the purchase agreements disclosed in the Offering Plan (including purchase prices)—and had engaged in several attempted sales of units (*see id.* ¶¶ 60, 62, 63, 85-86, 90). All the while, most residents at the Building were claiming to be "condo unit owners," or were renting directly from individuals whom they believed to be unit owners, even though there had been no legal transfer of title to these units by Sponsor (*see id.* ¶¶ 67, 89(a)).

NYAG's investigation also revealed repeated misuses of residents' funds by Wu, Yang, and Sponsor, as well as improper payments and fees solicited from residents (SAC ¶¶ 64-66, 68-71). For example, based on the purported sale of 18 units at the Building, Sponsor should have deposited $90,000 into an escrow account (*id.* ¶ 64; NYSCEF # 83 at 5). But instead, Wu personally funded the $90,000 in an account, and as NYAG learned, many of these purported purchasers paid additional monies that were not held in escrow (*see* SAC ¶¶ 64-65, 88-89(b); *see* NYSCEF # 81 – Wu tr at 101:25-102:19). Wu also allegedly used down payments and other related monies for improper purposes, such as payments to third parties and for construction and development loans on the Building (SAC ¶¶ 65, 69; *see* Wu tr at 15:10-102:19). And in addition to these purported misusage of funds, Wu, with the assistance of Yang, also purportedly obtained monthly mortgage payments from certain individuals pursuant to promissory notes and residential mortgages

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 4 of 22

executed and originated by Wu, as well as collected monthly condominium fees from most purported unit holders (*see id.* ¶¶ 7, 68-71, 89(d); NYSCEF #s 100-104; *see also, e.g.,* Wu tr at 24:14-48:13, 60:10-72:22).

On March 9, 2018, NYAG requested additional information and documentation from Sponsor regarding each alleged purchase of condominium units in the Building (SAC ¶ 72; NYSCEF # 83). Sponsor responded with copies of interim leases and/or affidavits from purported residents detailing the nature of their respective purchases from Sponsor and made a representation that certain units were vacant (SAC ¶¶ 72-73; NYSCEF # 82). As alleged, NYAG determined that there were various misrepresentations in these documents. Among others, the purported "vacant" condominium units were in fact being rented to residents at non-rent stabilized rental rates and without rent stabilized leases (*see* SAC ¶¶ 73-74, 89(c), 91).

*Sponsor's Failed Sales Attempts and Fallout with Aggrieved Unit Purchasers*

In or about September 2018, Sponsor and Wu attempted to sell the entire Building to interim purchasers (SAC ¶ 75; NYSCEF # 84). Their attempts, however, failed because of disagreements over the terms of the sale (SAC ¶ 75). Two months later, in or about late November 2018, NYAG learned that the Building had been pledged as security for a note with an outstanding principal amount of $5.8 million that was now the subject of a foreclosure action filed in Kings County in 2018 (*id.* ¶ 77). A few years later, on April 13, 2021, an additional foreclosure action was filed in Kings County, alleging that Wu and Sponsor pledged the building against a $2,750,000 mortgage note (*id.* ¶ 79).[3]

The consequence of defendants' alleged scheme ultimately came to light in 2018, when NYAG received a complaint from an aggrieved purchaser who represented that Wu had stolen the deposit funds (SAC ¶ 76). Thereafter, from December 2018 to February 2020, approximately 19 aggrieved unit "purchasers" filed private civil actions in Kings County (*id.* ¶ 83). These "purchasers" obtained judgments against Wu and Sponsor, which resulted in Sponsor filing an involuntary petition in bankruptcy on July 27, 2022 (*id.* ¶ 84).[4]

---

[3] On or around December 4, 2019, Wu also attempted to sell Sponsor and the Building to relief defendants Avrahami and Sprei for $1,500,000 (SAC ¶ 80). Avrahami filed a lawsuit against Wu and Sponsor on June 25, 2020, and then commenced a second action on June 2, 2021, against Sprei to execute upon a confession judgment in favor of Avrahami (*id.* ¶¶ 78, 80). This June 2021 action disclosed to NYAG the December 2019 attempted sale (*id.* ¶ 80).
[4] The bankruptcy proceeding is captioned *In re 345 Ovington LLC,* Case No. 22-41782 (E.D.N.Y. Bankr.) (*see* NYSCEF #s 86, 131).

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

**Page 5 of 22**

*NYAG's Formal Investigation and Subsequent Enforcement Action*

Upon learning of these purchasers' claims against Sponsor, NYAG commenced a formal investigation and issued subpoenas to Wu and Sponsor for testimony (SAC ¶¶ 82, 89). NYAG contends that its investigation revealed that Sponsor, through Wu and Yang, repeatedly marketed and sold securities in a purported condominium without an accepted offering plan in place, made misrepresentations about the Offering Plan, the Building, and the nature of the condominium transactions to purported purchasers, failed to deposit down payments or sales proceeds into escrow accounts, improperly offered, originated, serviced mortgage loans without a license to do so, and rented apartments without charging a rent stabilized rate (*see id.* ¶¶ 7, 71, 73-74, 89-94).

NYAG then instituted this action against defendants on November 2, 2022, and amended its complaint on May 9, 2023 (NYSCEF # 1). In its 14-count operative complaint, NYAG broadly alleges violations of the Martin Act and its accompanying regulations, Section 63912), New York's security deposit laws, New York's deceptive business practice laws, and the RSL (SAC ¶¶ 88, 92, 96-210). NYAG seeks to, among other things, (1) enjoin Wu and Yang from further engaging in fraudulent and unlawful acts, (2) enjoin Wu and Yang from directly or indirectly engaging in the issuance, promotion, negotiation, advertisement, sale, or distribution of securities, (3) enjoin Wu and Yang from directly or indirectly engaging in real estate-related business or activity, (4) direct Wu and Yang to disgorge illegal profits and unjust enrichments and pay civil penalties (*id.* at Prayer for Relief and ¶ 8).

## Legal Standards

Pursuant to CPLR 3211(a)(7), on a motion to dismiss a cause of action when a "pleading fails to state a cause of action," the court "must accept as true the facts as alleged in the complaint and submissions in opposition to the motion, accord plaintiff[] the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (*Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc.*, 20 NY3d 59, 63 [2012]). Whether a plaintiff can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

CPLR 3211(a)(5) provides that a party may move to dismiss one or more causes of action on the ground that "the cause of action may not be maintained because of . . . statute of limitations." The party seeking dismissal on statute of limitations grounds "bears the initial burden of establishing, prima facie, that the time in which to sue has expired" (*Benn v Benn*, 82 AD3d 548, 548 [1st Dept. 2011]). This, in turn, requires a prima facie showing of "when the plaintiff's cause of action accrued" (*Lebedev v Blavatnik*, 144 AD3d 24, 28 [1st Dept 2016], quoting *Cottone v Selective Surfaces, Inc.*, 68 AD3d 1038, 1041 [2d Dept 2009]). If such a showing is

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**                          **Page 6 of 22**
**Motion No. 002, 003**

6 of 22

[* 6]

made, then the burden shifts to the non-movant to raise a question of fact as to "whether the statute of limitations has been tolled, an exception to the limitations period is applicable, or the plaintiff actually commenced the action within the applicable limitations period" (*Flintlock Constr. Servs., LLC v Rubin, Fiorella & Friedman, LLP*, 188 AD3d 530, 531 [1st Dept. 2020]). In considering the motion, a court must accept the allegations in the complaint as true and resolve all inferences in the non-movant's favor (*Island ADC, Inc. v Baldassano Architectural Group, P.C.*, 49 AD3d 815, 816 [2d Dept. 2008]).

## Discussion

In their motions, Wu and Yang seek dismissal of NYAG's complaint on two grounds: (1) the claims are time-barred under CPLR 3211(a)(5) (NYSCEF # 92 – Wu MOL at 7-9; NYSCEF # 95 – Yang MOL at 1-11; NYSCEF # 120 – Wu Reply at 4, 6-11; NYSCEF # 121 at 1-10); and (2) failure to state claims for relief as to all causes of action against them (Wu MOL 9-23; Yang MOL at 1, 11). Defendants' defense based on statute of limitations grounds will be addressed first, followed by their arguments on failure to state a claim grounds.

## I.  Motions to Dismiss on Statute of Limitations Grounds

Wu and Yang argue that none of their alleged misconduct tolled the statute of limitations or otherwise acted to revive NYAG's time-barred claims (Wu MOL at 7, Wu Reply at 6-12; Yang MOL at 1-11; Yang Reply at 1-11). In opposition, NYAG responds that the complaint sufficiently alleges an ongoing scheme of misconduct occurring through at least 2018 (NYSCEF # 118 – NYAG Wu Opp at 11; NYSCEF # 119 – NYAG Yang Opp at 9-10). For this reason, NYAG avers, the complaint contains sufficient allegations of a series of continuing wrongs, including those within the applicable statute of limitations period, which, in turn, renders all her claims as timely (NYAG Wu Opp at 12-15; NYAG Yang Opp at 10-13).

Under the CPLR, an action by NYAG pursuant to either the Martin Act and Section 63(12) "must be commenced within six years" (CPLR 213 [9]; *Matter of People v Cohen*, 214 AD3d 421, 422 [1st Dept 2023] ["Under CPLR 213(9), a six-year limitations period, not a three-year one, governs 'an action by the attorney general' under Executive § 63(12) and the Martin Act"]; *People v Allen*, 198 AD3d 531, 532 [1st Dept 2021] [same]). Conversely, although there is scant authority on the issue, it appears that claims brought for violations of GOL § 7-103 are governed by a three-year statute of limitations (*see Harlem Capital Ctr., LLC v Rosen & Gordon, LLC*, 145 AD3d 579, 580-581 [1st Dept 2016] [analyzing when landlord "openly repudiate[d]" obligations under GOL § 7-103 pursuant to the three year statute of limitations governing breach of fiduciary duty claims]; *see generally* CPLR 214 [3]).

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**
                                                                         Page 7 of 22

7 of 22

Here, NYAG commenced this action on November 2, 2022 (NYSCEF # 1). So when accounting for the 228-day tolling period instituted by the COVID-19 Executive Orders (*see Murphy v Harris*, 210 AD3d 410, 411-412 [1st Dept 2022] [explaining that the COVID-19 executive orders "constituted a toll of the applicable statute of limitations"]), any Martin Act or Section 63(12) claim that accrued prior to March 19, 2016, as well as any GOL § 7-103 claim that accrued prior to March 19, 2019, will be deemed untimely absent some exception or tolling mechanism.

One such exception is the continuing wrong doctrine. Under this doctrine, "where there is a series of continuing wrongs," the running of the limitations period will be tolled "to the date of the last wrongful act" (*see 225 ADC Realty Corp. v Popular Jewelry Corp*, 222 AD3d 510, 511 [1st Dept 2023]; *Palmeri v Willkie Farr & Gallagher LLP*, 156 AD3d 564, 568 [1st Dept 2017]). It is not enough for plaintiff to point to a "single wrong that has continuing effects" (*see Ganzi v Ganzi*, 183 AD3d 433, 434 [1st Dept 2020]). Rather, for the continuing wrong doctrine to apply, the complaint must allege "a series of independent, distinct wrongs," including one within the relevant limitations period (*see id.*). If a "continuing wrong" is sufficiently alleged for a particular claim, then that cause of action is "deemed to have accrued on the date of the last wrongful act" for purposes of calculating the applicable statute of limitations accrual date (*see Harvey v Metro. Life Ins. Co.*, 34 AD3d 364, 364 [1st Dept 2006], quoting *Leonhard v United States*, 633 F2d 599, 613 [2d Cir 1980]; *accord Palmeri*, 156 AD3d at 568).

Courts within the First Department have applied the "continuing wrong doctrine" where a complaint alleges a single fraudulent scheme with a series of continuing fraudulent acts in support of that scheme (*see e.g., People v Fischman*, 2023 WL 5288081, at *21 [Sup Ct, NY County, Aug. 3, 2023] [concluding that the amended complaint was timely where it alleged earlier conduct that "was part of a single allegedly fraudulent scheme to defraud [] investors"]; *People v Trump*, 62 Misc 3d 500, 508 [Sup Ct, NY County, 2018] [holding that the continuing wrong doctrine applied where complaint "alleged continuous and pervasive failure to operate and manage [an entity] in accordance with corporate and statutory rules and fiduciary obligations"]). The same is true where a complaint has alleged a breach of a continuing duty or an ongoing failure to comply with applicable laws (*see e.g., Tsui v Chou*, 2020 WL 3578451, at *4 [Sup Ct, NY County, July 1, 2020] [holding that the continuing wrong doctrine applied where defendant refused to offer unsold condominium units in breach of contractual obligation and failed to amend offering plan to reflect unit ownership]; *People v FT George Apt. Corp.*, 2015 WL 1888415, at *1 [Sup Ct, NY County, Apr. 23, 2015] [concluding that the continuing wrong doctrine applied where petition alleged that respondent improperly refused to sell apartment units to tenant-shareholders in contravention of its corporate purpose and continued to operate a building as a for-profit residential building, thereby depriving tenants of rent stabilization protections]).

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 8 of 22

NYAG, in opposing Wu and Yang's motions, speaks in general terms regarding an alleged scheme set forth in the complaint. But a review of the complaint reveals that there are five distinct categories of claims underlying the complaint's 14 causes of action under the Martin Act, Section 63(12), and GOL § 7-103. The first category relates to the alleged illegal sales of units in the Building and the collection of fees without a valid offering plan on file (*see* SAC ¶¶ 96-110, 127-133, 139-141, 144, 175-176, 179). The second category pertains to Wu and Yang's alleged mismanagement and misappropriation of purchasers' deposits and downpayments (*see id.* ¶¶ 111-126, 161-169, 177-178). The third category covers alleged fraudulent and illegal conduct concerning representations in the Offering Plan and about the Building (*see id.* ¶¶ 146-160, 182-190). The fourth category pertains to Wu engaging in the mortgage business without a license (*see id.* ¶¶ 191-198). And the fifth category relates to Wu and Yang's lack of compliance with the RSL (*see id.* ¶¶ 203-210). As explained below, with this proper framing of claims in mind, the "continuing wrong doctrine" will toll the statute of limitations for at least some (but not all) of NYAG's claims.

## A. Alleged Illegal Sale and Fee Collection Claims

NYAG alleges that Wu and Yang, through Sponsor, engaged in a scheme to market, sell, and attempt to sell units in the Building to members of the public—primarily those who were of Chinese descent—despite the lack of a valid Offering Plan on file with NYAG's office (*see* SAC ¶¶ 99-101, 105-109, 132, 139-141, 175-176). NYAG also avers that Wu and Yang improperly collected monthly maintenances fees from these purported purchaser based on their alleged, but ultimately nonexistent, ownership of security interests in the Building (*see id.* ¶¶ 144, 179). To support these allegations, NYAG alleges numerous purchase agreements that were primarily entered between May 2012, and July 2016, as well as additional attempted sales of purported condominium units as late as in 2018 and 2019 (*see id.* ¶¶ 41, 57-58, 60, 63-64, 75, 78, 80-81, 85, 90; *see also* NYSCEF # 80; Wu tr. at 15:10-102:19). And in addition to these alleged illegal sales, Wu and Yang also illegally collected monthly condominium fees, totaling thousands of dollars from purported unit holders, which purportedly continued into at least December 2019 (*id.* ¶¶ 7, 70-71).

Based on these allegations, NYAG has sufficiently alleged a repeated and persistent illegal scheme in which at least certain of defendants' wrongful acts in furtherance of that scheme accrued on or after March 19, 2016. Accordingly, at this pleading stage, NYAG's claims related to Wu and Yang's illegal sale of condominium units without a valid offering plan, as well as their illegal collection of maintenance fees from purported unit holders, is deemed timely under the continuing wrong doctrine (*225 ADC Realty Corp*, 222 AD3d at 511).

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

Page 9 of 22

[* 9]

9 of 22

B. Mismanagement and Misappropriation of Deposits and Downpayments

NYAG's next set of claims relate to Wu and Yang purportedly mismanaging and misappropriating downpayments and deposits from purported purchasers (*see* SAC ¶¶ 111-126, 161-169, 177-178). NYAG alleges that, although each sale agreement entered with purported purchasers reflected that downpayments would be held in escrow, Sponsor, Wu, and Yang did not do so (*see id.* ¶¶ 60, 63-64). Specifically, NYAG alleges that Wu admitted during his October 4, 2019, investigatory interview that he personally funded $90,000 into an escrow account, but any additional downpayments that had been obtained were then used for other purposes (*id.* ¶¶ 65-66). Those purposes included payments to third parties and payments of construction and development loans (*id.* ¶ 69). Based on these allegations in the complaint, as well as its accompanying exhibits, it appears that many of the alleged deposits collected by Wu and Yang were obtained beginning in June 2012 (when construction on the Building began) and all the way through around July 2016 (*see e.g.,* SAC ¶ 69, 71; Wu tr at 15:10-102:19; *see also* NYSCEF # 80). Therefore, at least certain of the allegedly misappropriated deposits and downpayments were collected, commingled, and/or used by Wu and Yang pursuant to this alleged scheme after the relevant March 19, 2016, accrual date for NYAG's Martin Act and Section 63(12) claims. Hence, at the pleading stage, these claims are deemed timely under the continuing wrong doctrine.

However, the same cannot be said about NYAG's GOL § 7-103 claim, which was apparently brought pursuant to NYAG's authority under GOL § 7-109, rather than Section 63(12) (*see* SAC ¶ 163 and at p. 32 [representing that the "NINTH CAUSE OF ACTION" was for "Security Deposits" under "N.Y. Gen. Oblig. Law §7-103"]). As noted above, based on the filing of this action, NYAG's GOL § 7-103 claim must have accrued between March 19, 2019, and November 2, 2022. But none of the allegations or exhibits annexed in the complaint indicate that Wu and Yang misappropriated deposits after between March 19, 2019, and November 2, 2022. The continuing wrong doctrine would thus fail to preserve this claim. And this would be the case even if the court were to draw a favorable inference that Wu and Yang first "openly repudiated" their escrow obligations under GOL § 7-103 in or around late 2018, when the first claims by purported purchasers were made against Sponsor (*see id.* ¶¶ 76, 83; *cf. Harlem Capital Ctr.,* 145 AD3d at 581 [noting that landlord "openly repudiate[d]" GOL § 7-103 obligations upon ignoring security deposit within the three-year statute of limitations period]).

NYAG's Ninth Cause of Action is dismissed as untimely.

C. Alleged Misrepresentations Concerning the Building

NYAG alleges a general scheme of fraudulent misrepresentations and deceptive practices flowing from the Offering Plan's disclosures and defendants' representations concerning the Building (SAC ¶¶ 146-160, 182-190). For example,

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 10 of 22

10 of 22

NYAG alleges that, because Sponsor ultimately failed to submit a Declaration of Condominium, the Building was never separated into separate tax lots with legal titles that could be transferred (*see id.* ¶¶ 40-45). Yet despite this fact, Sponsor, through its then-counsel, represented in 2016 that it was renting to genuine "interim purchasers" when it was, in fact, renting apartment units to "non-interim purchasers" (*see id.* ¶¶ 46-58). NYAG similarly alleges that, despite purportedly selling units without the legal authority to do so, Wu and Yang failed to disclose the alleged condominium sales in either the Offering Plan or Amended Plan (*see id.* ¶¶ 90, 92[c], 157). Finally, NYAG alleges that Wu and Yang failed to disclose the legal status of the Building at any point during the purported sales and marketing process, and that Wu also admitted to selling units at prices that were not disclosed in the Offering Plan or the Amended Plan (*see id.* ¶¶ 43-45, 62-63, 66-67; *cf. also* NYSCEF # 75 *with* NYSCEF #s 80, 83).

To be sure, these alleged misrepresentations and omissions by Wu and Yang largely occurred between 2014 and 2015 (*see* NYSCEF # 80). But the complaint and its accompanying exhibits sufficiently alleges that at least some of Wu and Yang's purported misconduct flowing from this scheme occurred between late 2016 and September 2018 (*see* SAC ¶¶ 74-75; *see also, e.g.*, Wu tr at 105:18-110:8; NYSCEF # 84). Thus, upon application of the continuing wrong doctrine to this set of claims, NYAG's claims of Wu and Yang's fraudulent misrepresentations under the Martin Act and their repeated and persistent fraud and illegality under Section 63(12) is timely—at least at this lawsuit's current procedural posture.

D. <u>Engaging in a Mortgage Business Without a License</u>

NYAG's next category of misconduct pertains to Wu's alleged scheme to issue and underwrite mortgages without a license (SAC ¶¶ 191-198). Specifically, NYAG avers that Wu offered, originated, and serviced residential mortgage loans to at least five purchasers, although it does not identify any specific dates in the complaint (*see id.* ¶¶ 68, 89[d], 195). However, as is evident from a review of five separate mortgage agreements offered by NYAG as part of its opposition—all of which were executed between May 21, 2012, and September 13, 2014—none of the unlicensed loan agreements and mortgage originations occurred within the March 19, 2016, accrual date, as would be necessary for NYAG to invoke application of the continuing wrong doctrine. This would be the case even if the complaint had alleged or supported an inference that Wu was still collecting mortgage principal and interest payments within the applicable accrual date (*see Henry v Bank of Am.*, 147 AD3d 599, 601 [1st Dept 2017] [explaining that the continuing wrong doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct"]). NYAG's Twelfth Cause of Action is, for that reason, barred by the statute of limitations and is dismissed as untimely.

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 11 of 22

### E. Compliance with the RSL

NYAG's final category of alleged misconduct perpetrated by Wu and Yang relates to their alleged issuing of illegal leases in violation of the RSL (SAC ¶¶ 203-210). For this claim (i.e., the Fourteenth Cause of Action), NYAG alleges that Wu and Yang entered into lease agreements that were exclusively for a one-year term and failed to provide legal renewal lease forms (*see id.* ¶¶ 208-209). NYAG further avers that although Sponsor represented that it was leasing units to "interim purchasers," it was, in fact, leasing many apartments to "non-interim purchasers" (*id.* ¶¶ 50-51, 55). And, in addition to these allegations, NYAG identifies five unsold units that were not charged rent stabilization rents, and additional unsold units that "Sponsor currently rents" (*see id.* ¶ 91). These facts, when coupled with the complaint's allegations and exhibits identifying various illegal sales and fraudulent representations concerning "interim purchasers," indicate that at least some of the allegedly illegal leases underlying this alleged scheme were entered into within the March 19, 2016, accrual date. As a result, the Fourteenth Cause of Action is timely at the pleading stage based on an application of the continuing wrong doctrine.

In conclusion, NYAG has sufficiently established that the "continuing wrong doctrine" tolls the running of statute of limitations for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, and Fourteenth Causes of Action, and those claims are deemed timely at this juncture. Conversely, the "continuing wrong doctrine" does not toll the running of the statute of limitation for NYAG's Ninth and Twelfth Causes of Action, and those claims are dismissed as time-barred.

## II. Motions to Dismiss Based on Sufficiency of Pleadings

Wu and Yang argue that NYAG's causes of action all fail to state claim for relief. They further aver that (1) NYAG cannot maintain standalone causes of action under Section 63(12); and (2) NYAG has failed to plead any causes of action with particularity under CPLR 3016(b) (*see* Wu MOL at 9-23; Wu Reply at 11-16; Yang MOL at 1, 5-6, 11). These contentions are addressed in turn for those claims that are not time barred.

### A. Section 63(12) Provides for Independent Causes of Action

Section 63(12) provides that NYAG "may apply, in the name of the people of the state of New York . . . for an order enjoining the continuance" of any "repeated fraudulent or illegal acts" or business activities, or "persistent fraud or illegality in the carrying on, conducting or transaction of business" (Executive Law § 63 [12]). The statute is to be liberally construed to achieve its intended purpose (*see People v Greenberg*, 95 AD3d 474, 483 [1st Dept 2012]). Despite this language, Wu and Yang contend that Section 63(12) does not create "a standalone cause of action but a mere enforcement mechanism" (*see* Wu MOL at 10, 12-14; Yang MOL at 1). This position

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

**Page 12 of 22**

[* 12]

12 of 22

is contrary to controlling law. The First Department has made it abundantly clear that "the Attorney General is, in fact, authorized to bring a cause of action for fraud under Executive Law § 63(12)" (*Matter of People v Trump Entrepreneur Initiative LLC*, 137 AD3d 409, 418 [1st Dept 2016], *appeal withdrawn* 31 NY3d 1011 [2018]; *see also People v Coventry First LLC*, 52 AD3d 345, 345-346 [1st Dept 2008] [concluding that Section 63(12) claim was "sufficiently stated"]).[5] And none of the authorities relied upon by Wu or Yang support their misguided contention.

For example, *People v Charles Schwab & Co. Inc.* (109 AD3d 445 [1st Dept 2013), cited by Wu and joined by Yang, was **expressly abrogated** by the First Department in *Trump Entrepreneur Initiative* (*see Trump Entrepreneur Initiative*, 137 AD3d at 414-418 ["*Charles Schwab* does not comport with prevailing authority, and in fact, acts to limit the power that the Attorney General has long been exercising under § 63(12)"]). And the trial court order cited by Wu and Yang, *People v The Trump Entrepreneur Initiative LLC* (2014 WL 5241483 [Sup Ct, NY County, Oct. 8, 2014]) was the same one that was modified by the First Department on this specific issue (*see Trump Entrepreneur Initiative*, 137 AD3d at 418-419). Finally, insofar as *Matter of People v Frink Am.* (2 AD3d 1379 [4th Dept 2003]) stands for a contrary proposition, that Fourth Department case is not binding on this court, and, in any event, it was not followed by the First Department in *Trump Entrepreneur Initiative* (*see* 137 AD3d at 417 [citing *Frink* with a "*but see*" signal).

As a final note here, the subsequent treatment of the First Department's decision in *Charles Schwab*, the trial court's order in *Trump Entrepreneur Initiative*, and the Fourth Department's decision in *Frink* could have been discovered by counsel through a cursory review of subsequent authorities, as well as relevant procedural histories. Thus, the fact that counsel for Wu and Yang relied upon these expressly abrogated and overruled authorities borders on sanctionable conduct. Counsel for Wu and Yang are hereby expressly cautioned to ensure strict candor and accuracy when citing legal authorities in any future applications.

B. The Complaint's Compliance with CPLR 3016(b) and Sufficiency of Its Pleadings

In general, "[a] claim rooted in fraud must be pleaded with the requisite particularity under CPLR 3016(b)" (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). Pointing to this standard, Wu and Yang contend that NYAG's claims lack the specificity required by 3016(b) (*see* Wu MOL at 11, 13, 17-

---

[5] Given this determination, there is no basis to conclude that the First and Second Causes of Action were improperly pleaded as separate causes of action. It is well settled that NYAG is entitled to pursue separate Martin Act and Section 63(12) claims based on the same alleged underlying conduct (*see Greenberg*, 95 AD3d at 482-483 [recognizing that Martin Act and Section 63(12) use "virtually identical language"]; *People v Mashinsky*, 79 Misc 3d 1237(A), at *15 [Sup Ct, NY County, Aug. 4, 2023] [observing that Martin Act claims and Section 63(12) claims often "stand and fall together"]).

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

Page 13 of 22

13 of 22

19). NYAG retorts that CPLR 3016(b) does not apply to claims brought by NYAG under the Martin Act and Section 63(12) (NYAG Wu Opp at 10).

A review of the relevant case law establishes that at best, it is unclear whether CPLR 3016(b)'s particularity requirement applies to Martin Act and Section 63(12) claims (*compare People v Katz*, 84 AD2d 381, 385 [1st Dept 1982] [observing that "[s]ince many of the 18 causes [in NYAG's action brought pursuant to the Martin Act and Section 63(12)] are framed in fraud or sound in fraud, the circumstances constituting the wrong should have been stated in detail" under CPLR 3016(b)] *and People v Charles Schwab & Co., Inc.*, 33 Misc 3d 1221[A], at *3 [Sup Ct, NY County, 2011] [concluding that CPLR 3016(b) applies "with equal force to private parties and the AG"], *with Feinberg v Marathon Patent Group, Inc.*, 193 AD3d 568, 570-571 [1st Dept 2021] [concluding that heightened pleading standard does not apply to claims under the Securities Act not premised on common-law fraud] *and People v Trump*, 2023 WL 128271, at *4 [Sup Ct, NY County, Jan. 6, 2023] [holding that Section 63(12) is "not subject to this heightened pleading standard because the underlying conduct is premised on deceptive acts or practices that do not include intent or reliance as an element of those claims"]). The court, however, need not definitively resolve this issue because, even assuming CPLR 3016(b)'s particularity requirement applied to NYAG's claims (even those that do not seemingly sound in fraud), NYAG has plainly alleged sufficient facts to permit a "reasonable inference" of the alleged misconduct (*see Eurycleia Partners*, 12 NY3d at 559, citing *Pludeman v N. Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]). Further, each of NYAG's non-time-barred claims sufficiently state a claim for relief under CPLR 3211(a)(7).

### 1. *Applicable Elements of Martin Act and Section 63(12) Claims*

It is well established that the Martin Act "should be liberally construed to give effect to its remedial purpose of protecting the public from fraudulent exploitation in the offer and sale of securities" (*People ex rel. Schneiderman v Barclays Capital, Inc.*, 47 Misc 3d 862, 868 [Sup Ct, NY County, 2015] [internal quotations omitted]). For this reason, the terms "fraud" and "fraudulent practices" are given broad meaning and will encompass all deceitful practices, even acts "not originating in any actual evil design to perpetrate fraud or injury upon others, which do tend to deceive or mislead the purchasing public" (*People v Lexington Sixty-First Assocs.*, 38 NY2d 588, 595 [1976], citing *People v Federated Radio Corp.*, 244 NY 33, 38-39 [1926]). To sufficiently plead Martin Act fraud, NYAG must allege that the purported fraud or fraudulent practice involved misrepresentations and/or omissions or concealments of material facts (*see Barclays*, 47 Misc 3d at 869; *see also Greenberg*, 95 AD3d at 483 [explaining that "an essential element of the Attorney General's Martin Act claims is that the alleged fraudulent transactions be material, i.e., that they have more than a trivial effect on net income or shareholder equity"]). NYAG, however, is not required to plead "scienter or intent to defraud" (*see Greenberg*, 95 AD3d at 483). Nor must NYAG plead reliance on the part of any

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

**Page 14 of 22**

14 of 22

[* 14]

investor to obtain relief (*see People by Schneiderman v Credit Suisse Secs. (USA) LLC*, 31 NY3d 622, 632 [2018], citing *State of New York v Sonifer Realty Corp.*, 212 AD2d 366, 367 [1st Dept 1995]).

Meanwhile, Section 63(12) authorizes NYAG to enjoin and seek restitution and disgorgement for fraudulent and illegal business activity (*see People v Greenberg*, 27 NY3d 490, 497 [2016]). The statute contains "virtually identical language" to the Martin Act regarding the term "fraud" and "fraudulent" (*see State v Rachmani Corp.*, 71 NY2d 718, 721 n 1 [1988]). Meanwhile, the term "persistent fraud" or "illegality" is defined as the "continuance or carrying on of any fraudulent or illegal act or conduct" (Executive Law 63 [12]). And "repeated," as used in the statute, is defined as "repetition of any separate and distinct fraudulent or illegal act" (*id.*). Drawing from these definitions, it follows that, to sufficiently plead a claim under Section 63(12), NYAG must allege that (1) defendant engaged in "repeated" fraudulent or illegal acts or, (2) in carrying on, conducting, or transacting a business, defendant engaged in "persistent fraud or illegality" (*see People v Sprint Nextel Corp.*, 41 Misc 3d 511, 524 [Sup Ct, NY County, 2013], *affd* 114 AD3d 622 [1st Dept 2014]). Like the Martin Act, a claim under Section 63(12) does not require evidence of bad faith, scienter, or intent to defraud (*see Greenberg*, 95 AD3d at 483; *People v Gen. Elec. Co., Inc.*, 302 AD2d 314, 315 [1st Dept 2003] ["neither bad faith nor scienter is required under Executive Law § 63(12)"]).

Generally, corporate officers and directors are not held liable for the corporation's wrongs merely because of their status as an officer (*Ramos v 24 Cincinatus Corp.*, 104 AD3d 619, 620 [1st Dept 2013]). However, they may be held personally liable for the corporation's fraudulent or illegal business conduct "if they participate in it or have actual knowledge of it" (*People v. Apple Health & Sports Club, Ltd., Inc.*, 80 NY2d 803, 807 [1992]). Participation is sufficient to hold a corporate officer liable if the officer is actively involved in the business dealing, such as supervising the business, being present at the commission of the fraudulent conduct, or performing some of the work (*see Fletcher v Dakota, Inc.*, 99 AD3d 43, 49 [1st Dept 2012] [observing that "a director may be held individually liable to third parties for a corporate tort if he either participated in the tort or else 'directed, controlled, approved, or ratified the decision that led to the plaintiff's injury'"]; *Clark v Pine Hill Homes, Inc.*, 112 AD2d 755, 755 [4th Dept 1985] [holding corporate officer individually liable because he "personally supervised" and "participated" in negligent construction]).

The complaint's various causes of action will now be addressed with these legal principles in mind.

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

Page 15 of 22

### 2. First, Second, and Eighth Causes of Action – Violations of GBL §§ 352-e(1)(a) and (2)

NYAG's First and Second Causes of Action relate to Wu and Yang's alleged violation of GBL §§ 352-e(1)(a) and (2) by virtue of selling units in the Building without a valid and accepted offering plan (SAC ¶¶ 96-110). NYAG further alleges in the Eighth Cause of Action that Wu and Yang violated GBL §§ 352-e(1)(a) and (2) and 352(1), and 13 NYCRR § 20.5 by offering real estate securities that did not comport with the prices disclosed in the Offering Plan and failing to amend or update its draft submission to disclose accurate prices (SAC ¶¶ 153-160).

As set forth in Section 352-e, it is illegal for

> any person, partnership, corporation, company, trust or association . . . to make or take part in a public offering or sale . . . of securities [consisting] of participation interests or investments in real estate . . . when such securities consist primarily of participation interests or investments in one or more real estate ventures . . . unless and until there shall have been filed with the department of law, prior to such offering, . . . an "offering statement" or "prospectus" concerning the contemplated offering . . . .

(GBL § 352-e [1][a]; *E. Midtown Plaza Hous. Co., Inc. v Cuomo*, 20 NY3d 161, 169 [2012] ["The Martin Act makes it illegal for a person to make or take part in 'a public offering or sale' of securities consisting of participation interests in real estate, including cooperative apartment buildings, unless an offering statement is filed with the Attorney General"]). Pursuant to Section 352-e(2), "[n]o offer, advertisement or sale of such securities shall be made in or from the state of New York until [NYAG] has issued to the issuer or other offerer a letter stating that the offering has been filed" (GBL § 352-e [2]). This statute is "liberally construed to give effect to its remedial purpose of protecting the public from fraudulent exploitation in the offer and sale of securities" (*All Seasons Resorts, Inc. v Abrams*, 68 NY2d 81, 86-87 [1986]).

Here, Wu and Yang, through Sponsor, engaged in a scheme that marketed, sold, and attempted to sell units in the Building to Chinese immigrants and first-generation Chinese-Americans for millions of dollars despite the lack of a valid offering plan on file with NYAG's office (*see* SAC ¶¶ 99-110). As alleged, although NYAG had accepted the Offering Plan for filing, and Sponsor submitted an effectiveness amendment, Sponsor ultimately failed to file or record a Declaration of Condominium with the NYCDOF (*id.* ¶¶ 41-43). For this reason, the Building was not a legal condominium for which Sponsor could sell or transfer units to potential purchasers (*id.* ¶¶ 42-45). Yet, despite this fact, between 2013 and 2018, Wu and Yang marketed, sold, and/or attempted to sell units in the Building to purported purchasers even though they had no legal titles to transfer (*see id.* ¶¶ 57-58, 60-64, 75, 78, 80, 85-87; NYSCEF # 80). And, as the complaint indicates, they made these sales at prices that were inconsistent with the prices disclosed in either the Offering

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 16 of 22

16 of 22

Plan or Amended Plan (*see* SAC ¶¶ 62, 66; *cf. also* NYSCEF #s 75, 79 *with* NYSCEF #s 80, 83). By virtue of convincing purchasers to agree to these alleged sales contracts, Wu and Yang were then able to extract monthly charges from them and convince them that they were, in fact, bona fide unit holders for the Building (*id.* ¶¶ 67-71). Meanwhile, despite being aware of deficiencies in the Offering Plan and the Amended Plan, as well as the representations contained therein, Wu and Yang never updated the Offering Plan or the Amended Plan to reflect any potential unit purchases or changes in unit prices, which NYAG alleges was part of an attempt to mask their misconduct (*see id.* ¶¶ 53, 57-58, 72-74, 90-93).

These particularized allegations, when considered in their totality, support a reasonable pleading-stage conclusion that Wu and Yang, as co-owners and principals of Sponsor, violated GBL §§ 352-e(1)(a) & (2), 352(1), and 13 NYCRR § 20.5, and that their violations were repeated and persistent under Section 63(12). Accordingly, the motions to dismiss the First, Second, and Eighth Causes of Action are denied.

### 3. *Third and Fourth Causes of Action – Violations of GBL §§ 352-e(2-b), 352-h, and 13 NYCRR § 20.3(o)(2-7)*

NYAG's Third and Fourth Causes of Action relate to Wu and Yang's alleged violation of GBL §§ 352-e(2-b), 352-h, and 13 NYCRR 20.3(o)(2-7) by virtue of their mismanagement and misappropriation of purchasers' deposits and downpayments (SAC ¶¶ 111-126). Section 352-e(2-b) provides that "all deposits, down-payments or advances made by purchasers of residential units shall be held in a special escrow account pending delivery of the completed apartment or unit and a deed or lease" (GBL § 352-e [2-b]). Section 352-h, in turn, states that "all moneys received" from a purchaser "shall continue to be the money of the person making such purchase, deposit or advance," "shall be held in trust," and "shall not be commingled with the personal moneys or become an asset of the person, partnership, corporation, company, trust or association receiving" the funds (*id.* § 352-h; *see also* 13 NYCRR 20.3 [o])). These provisions were implemented to "protect[] the public against fraudulent exploitation in the purchase of securities" (*Riviera Prop. Holdings, LLC v Ferber Chan Essner and Coller, LLP*, 58 Misc 3d 708, 713 [Sup Ct, NY County, 2017], citing GBL § 352-e(1)(a) and *E. Midtown Plaza Hous. Corp.*, 20 NY3d at 169-170).

Here, NYAG alleges that Wu and Yang misappropriated deposits paid by potential purchasers by failing to deposit proceeds in an escrow account, commingling deposits with personal funds, and using deposit monies to pay for personal expenses (*see* SAC ¶¶ 114-116, 123-125). Specifically, the complaint details how Sponsor purportedly sold approximately 18 units in the Building and that Wu and Yang claimed to have collected $90,000 in deposits (*id.* ¶¶ 63-64; NYSCEF # 80). But instead of depositing these funds into an escrow account, Wu personally funded $90,000 in an escrow account and failed to deposit any additional down

payments when received (*see* SAC ¶ 65; Wu tr at 101:20-102:19). Wu, together with Yang, then used these "sales" monies to make payments to third parties and pay various loans taken out to construct and develop the Building (*id.* ¶¶ 69, 71; *see e.g.*, Wu tr at 15:10-17, 38:9-40:24, 50:11-52:25). These particularized facts, as well as the accompanying exhibits to the complaint, sufficiently support a pleading-stage conclusion that Wu and Yang engaged in conduct that violated of GBL §§ 352-e(2-b) and 352-h and 13 NYCRR § 20.3(o)(2-7), and that their violations were repeated and persistent. Consequently, the motions to dismiss the Third and Fourth Causes of Action are denied.

4. *Fifth, Sixth, Seventh, and Tenth Causes of Action – Alleged Fraudulent Statements and Misrepresentations in Connection with the Sale or Offering of Real Estate Securities*

NYAG's Fifth, Sixth, Seventh, and Tenth Causes of Action all generally relate to alleged fraudulent statements and misrepresentations in connection with the sale or offering of real estate securities, in violation of GBL §§ 352-c and 352(1). NYAG's Fifth Cause of Action is brought solely under the Martin Act and focuses on the alleged offering and selling of condominium securities without any legal right to effectuate a transfer of anything of value (SAC ¶¶ 127-133). NYAG's Sixth Cause of Action is brought solely under Section 63(12) for repeatedly and persistently engaging in the same alleged misconduct set forth in the Fifth Cause of Action (*id.* ¶¶ 134-145). The Seventh Cause of Action is brought solely under the Martin Act and focuses on the offering plan's representation that the Building was vacant (*id.* ¶¶ 146-152). Finally, the Tenth Cause of Action is brought under both the Martin Act and Section 63(12) and focuses on, among other things, Wu and Yang's alleged fraudulent practices in depositing, maintaining, and misappropriating purported sales proceeds in connection with the illegal sale of condominium units in the Building, as well as their illegal conduct related to maintaining escrow proceeds and collecting maintenance fees (*id.* ¶¶ 170-181).

Pursuant to GBL § 352-c, the Martin Act prohibits fraudulent or misleading practices and representations by any person or entity who is "engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities" (GBL § 352-c[1]). Section 63(12), in turn, empowers NYAG to enjoin and seek restitution concerning such fraudulent activity that is persistent or repeated (*see Greenberg*, 27 NY3d at 497). In both cases, the lynchpin of whether the complaint sufficiently states a claim for relief is whether the alleged fraud, misrepresentations, and omissions are material (*see Barclays*, 47 Misc 3d at 869). The test for materiality is whether defendants' representations or omissions, "taken together and in context, would have [misled] a reasonable investor[] about the nature of the investment" (*People v Bank of N.Y. Mellon Corp.*, 40 Misc 3d 1232[A], at *11 [Sup Ct, NY County, Aug. 5, 2013]), quoting *Acacia Natl. Life Ins. Co. v Kay Jewelers, Inc.*, 203 AD2d 40, 44 [1st Dept 1994]). In other words, "there must be a substantial likelihood that the

[misrepresentation or] disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" (*TSC Indus., Inc. v Northway, Inc.*, 426 US 438, 449 [1976]; *accord Rachmani*, 71 NY2d at 726-727). By contrast, for a standalone cause of action under Section 63(12), the test for fraud is "whether the targeted act ha[d] the capacity or tendency to deceive[] or create[d] an atmosphere conducive to fraud" (*Gen. Elec. Co., Inc.*, 302 AD2d at 314).

As the complaint details, the Building was never legally a condominium for which Sponsor could sell or transfer units to potential purchasers (SAC ¶¶ 41-45). Yet Sponsor, under the control of Wu and Yang, entered into various purported purchase agreements for the sale of nonexistent shares in condominium units in the Building, in turn causing these purchasers to erroneously believe that they were unit holders in the Building (*see id.* ¶¶ 63-64, 67; *see also id.* ¶ 75). Wu and Yang then allegedly exploited these purported purchasers' flawed understanding to extract common charges and maintenance fees to which neither Sponsor, Wu, nor Yang were legally entitled (*see id.* ¶¶ 67-71). The complaint further supports an inference that the legal status of the condominium units (or lack thereof) was material to potential purchasers and tended to deceive them, given that upon discovering the truth of their circumstances, these purported purchasers notified NYAG of potential misappropriation of fraud and instituted private civil actions against Sponsor (*see id.* ¶¶ 67, 76, 83-84). All the while, Wu and Yang allegedly misrepresented to NYAG, among other things, the circumstances surrounding the purported unit sales for the Building, the occupancy status of certain units to NYAG, and the rental status of the Building's residents (*see id.* ¶¶ 46-55, 58, 60-66, 72-74, 90-93; Wu tr. at 121:5-122:12; NYSCEF # 83 at 5).

Taken together, these particularized facts adequately and specifically allege fraudulent conduct prohibited by GBL § 352-c in connection with the offering of real estate securities, and that this fraudulent and illegal conduct was persistent and repeated over the course of the alleged scheme. The motions to dismiss the Fifth, Sixth, Seventh, and Tenth Causes of Action are denied.[6]

### 5. *Eleventh Cause of Action – Violation of GBL § 349*

NYAG's Eleventh Cause of Action is brought pursuant to Section 63(12) for repeated and persistent violations of GBL § 349 (SAC ¶¶ 182-190). Section 349 of the GBL creates a cause of action for any person injured by "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]" (GBL § 349[a], [h]). The statute applies to "virtually all economic activity" (*Karlin v IVF Am., Inc.*, 93 NY2d 282, 291 [1999]), and "may be

---

[6] Although there are similar allegations supporting each of these claims, the court discerns no basis to conclude that the Fifth and Sixth Causes of Action are duplicative of the Tenth Cause of Action.

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

**Page 19 of 22**

invoked regardless of whether the allegedly deceptive activity is covered by other laws" (*see New York v Feldman*, 210 F Supp 2d 294, 301 [SD NY 2002]).

To state a GBL § 349 claim, NYAG must allege that (1) defendants' acts were consumer oriented; (2) the acts or practices were deceptive or "misleading in a material way"; and (3) plaintiff suffered injury a result (*see Stutman v Chem. Bank*, 95 NY2d 24, 29 [2000]; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 85 NY2d 20, 25 [1995]). The gravamen of the complaint must be conduct by defendants that results in consumer injury or harm to the public (*Gomez-Jimenez v New York Law Sch.*, 103 AD3d 13, 16 [1st Dept 2012], *lv denied* 20 NY3d 1093 [2013] ["defendant's acts or practices must have a broad impact on consumers at large"]). And the deceptive practices alleged must be "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Gen. Elec. Corp.*, 302 AD2d at 315, quoting *Stutman*, 95 NY2d at 29).

Here, Sponsor, under the control of Wu and Yang, engaged in consumer oriented conduct that was repeated and persistent by virtue of entering into numerous purported purchase agreements for the sale of nonexistent condominium unit shares in the Building between 2014 and 2016, and then later attempting to sell the entire Building in 2018 and 2019 without a valid offering plan in place (*see id.* ¶¶ 63-64, 75). These alleged deceptive practice concerning the legal status of the condominium units (or lack thereof) plainly tended to deceive the consumers in a material way given that, upon discovering the truth of their circumstances, the purported unit holders in the Building notified NYAG of potential fraud and instituted private civil actions against Sponsor (*see id.* ¶¶ 67, 76, 83-84). And Wu and Yang subsequently took advantage of these purported purchasers' beliefs about their unit ownership to extract common charges and maintenance fees, among other harms and injuries (*see id.* ¶¶ 67, 70-71). NYAG has therefore sufficiently stated, with particularity, a Section 63(12) claim for repeated and persistent violations of GBL § 349. The motions to dismiss the Eleventh Cause of Action are denied.

### 6. *Fourteenth Cause of Action – Violation of 9 NYCRR § 2522.5*

NYAG's Fourteenth (and final) Cause of Action is brought pursuant to Section 63(12) for repeated and persistent violations of 9 NYCRR § 2522.5 based on Wu and Yang's alleged failure to comply with the RSL when issuing leases to tenants (SAC ¶¶ 203-210). As is relevant here, the RSL provides that a property owner must, when issuing leases to tenants, provide an option to execute a "one- or two-year term" lease "at the tenant's option" and rent "may not exceed the last legal regulated rent" (9 NYCRR § 2522.5[a][1], [b][1]). Furthermore, "[f]or a housing accommodation subject to the City Rent Law . . . the owner may not increase the rent charged in the initial lease or other rental agreement . . . for a period of one year or until the expiration date of the initial lease or rental agreement, whichever is later" (*id.* § 2522.5[a][1]). All rent-stabilized leases must be accompanied by "a rider in a form promulgated or approved by the DHCR" that "describ[es] the rights

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 20 of 22

20 of 22

[* 20]

and duties of owners and tenants" (*id.* § 2522.5 [c][1]; *see also Fuentes v Kwik Realty LLC,* 186 AD3d 435, 437 [1st Dept 2020] ["Where an owner fails to provide the rent stabilization rider or requested documentation, 'the owner shall not be entitled to collect any adjustments in excess of the rent set forth in the prior lease unless the owner can establish that the rent collected was otherwise legal'"]; *Ben-Horin v Coso 120 W. 105, LLC,* 2018 WL 2971167, at *2-3 [Sup Ct, NY County, June 13, 2018] [holding that plaintiffs were "rent-stabilized tenants" and entitled to "a proper rent-stabilized lease and rider at the appropriate legal regulated rent").

Here, NYAG alleges that although Sponsor represented that it was leasing units to "interim purchasers," it was, in fact, leasing apartments to "non-interim purchasers" given that the Building was never legally a condominium (*see* SAC ¶¶ 49-51, 55, 67, 91). Those "non-interim purchasers" would, in turn, have been entitled to protections under the RSL (*see id.* ¶¶ 51-52). But given that Wu and Yang, through Sponsor, characterized the legal status of the residents at the Building as "interim purchasers," the complaint supports a reasonable inference that Wu and Yang entered into lease agreements that were exclusively for one-year terms, failed to provide legal renewal lease forms, and otherwise failed to comply with the requirements of the RSL (*see id.* ¶¶ 208-209). And this alleged conduct persisted and repeated between 2014 and 2018. Accordingly, accepting the facts of the complaint as true and drawing all reasonable inferences in NYAG's favor, the complaint sufficiently states, with particularity, a claim under Section 63(12) for repeated and persistent violations of 9 NYCRR § 2522.5. The motions to dismiss the Fourteenth Causes of Action are denied.

## III.    Motion to Stay Based on Bankruptcy Proceedings

Wu and Yang seek a stay of this action pending the outcome of the bankruptcy proceeding involving 345 Ovington, which is currently pending in the Bankruptcy Court for the United States District Court for Eastern District of New York (EDNY) (Wu MOL at 1). Wu and Yang contend that NYAG's causes of action are intertwined with those previously asserted against 345 Ovington (prior to NYAG voluntarily discontinuing this action against it) and this action must be stayed as a matter of law (Wu Reply at 5-6; *see also* NYSCEF # 91).

The general rule in New York is that the automatic stay provisions of the Federal bankruptcy laws "do not extend to nonbankrupt codefendants" (*Merrill Lynch, Pierce, Fenner & Smith, Inc. v Oxford Venture Partners, LLC,* 13 AD3d 89, 89 [1st Dept 2004], quoting *Maynard v Fuller Co.,* 236 AD2d 300, 300 [1st Dept 2007]). An exception to this rule exists "when a claim against a non-debtor will have 'an immediate adverse economic consequence for the debtor's estate'" (*Empire Erectors and Elec. Co., Inc. v Unlimited Locations LLC,* 102 AD3d 419, 419 [1st Dept 2013], quoting *Queenie, Ltd. v Nygard Intl.,* 321 F3d 282, 287 [2d Cir 2003]).

**452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL**
**Motion No. 002, 003**

**Page 21 of 22**

[* 21]

21 of 22

Here, there is no dispute that neither Wu nor Yang are debtors in the bankruptcy proceedings pending before the EDNY Bankruptcy Court. Nor have either defendant remotely established—beyond conclusory conjecture—that resolution of the claims asserted by NYAG against them will result in adverse economic consequences to Sponsor's estate. Accordingly, their request to stay this action is denied.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendants Xi Hui Wu and Xiao Rong Yang's separate motions to dismiss the second amended complaint (MS 002 and MS 003, respectively) are granted insofar as dismissing the Ninth and Twelfth Causes of Action as time barred under CPLR 3211(a)(5); and it is further

ORDERED that defendants Wu and Yang's motions to dismiss are denied in all other respects; and it is further

ORDERED that within 30 days of the e-filing of this order, defendants shall file an answer to the second amended complaint; and it is further

ORDERED that counsel for NYAG shall serve a copy of this decision, along with notice of entry, on all parties within ten days of this filing; and it is further

ORDERED that that a preliminary conference shall be held via Microsoft Teams on April 17, 2024, at 11:30 a.m. or at such other time that the parties shall set with the court's law clerk, provided, however, that the parties shall first meet and confer to determine if there is agreement to stipulate to a preliminary conference order, available at https://www.nycourts.gov/LegacyPDFS/courts/comdiv/NY/PDFs/part49-PC-Order-fillable.pdf.

This constitutes the Decision and Order of the court.

<table>
<tr><td>02/26/2024<br>DATE</td><td></td><td></td><td>MARGARET A. CHAN, J.S.C.</td></tr>
</table>

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

452904/2022 PEOPLE BY JAMES vs. WU, XI HUI ET AL
Motion No. 002, 003

Page 22 of 22

22 of 22

[* 22]